The attorney for the Justice Department is participating from D.C. for funding reasons known to one and all. Ms. McGaughy? Is that how you say it? McGaughy. McGaughy. It doesn't look like that. May it please the Court. My name is Erin McGaughy. I am the representative for the petitioner, Mr. Capiz-Fabian, who is in the courtroom today. This is a case that arises out of an area of legal and procedural complexity, but the case itself is actually quite simple. The only dispute is whether the agency abused its discretion in rejecting the petitioner's appeal as untimely or whether it should have employed equitable tolling principles based on the record before it and granted adjustment of status based on the facts. The petitioner. Now, are you arguing that we should disagree with the Second Circuit's Rahim decision? So the Second Circuit's Rahim decision had to deal with a motion to reopen, whether motions to reopen were allowed. No, we're not arguing the motion to reopen. How do you get here without that vehicle or tolling? So it's our argument that equitable tolling does apply in these cases because these are claims processing units. It seems to me that's your only avenue. Correct, Your Honor. Yes. I mean, the motion to reopen argument in our brief was really in reference to the adjudicator's field manual reference to motions to reopen and what they were deeming untimely appeals. We understand that that's not our primary argument. It's really an equitable tolling argument instead because the regulations are pretty unclear and the manual conflicts with the regulations. The agency treated the 30-day deadline like a jurisdictional bar, and it should not have done so. Now, what's the remedy you seek? I'll let you get back to your argument, but this is a preliminary question I had. Sure. It's reverse and remand with instructions to grant adjustment of status. If the remedy is equitable tolling, then the position that the agency would have on remand would be to go back and complete the appeal, right? Yes, Your Honor. And therefore, all issues would be open, and the agency would be able to finally review what it may or may not have done before, the interviewer's recommended denial on other grounds. Yes, Your Honor. Whereas if you instruct us to grant relief, we would be foreclosing what it seems to me is appropriate agency process. Yes, Your Honor. I understand that. Another court at the Ninth Circuit had instructed, in a similar type of case, adjustment of status. They found it proper to do that in that circumstance. Well, if it was clear the agency had considered everything. Certainly. But here the cryptic denial referenced the petitioner's failure to provide the necessary documentation, which in this appeal is presumed to be the I-693, missing I-693. But that may not have been what the agency was referring to. They may have also been referring to the interviewer's recommended denial based on inadequate employment documentation, right? It could be that case. And I don't see any legal basis to foreclose that if we were to remand. Certainly, Your Honor. I understand that. It seemed to me, at least the way that I read the denial, pretty clear that it was just that missing medical evidence. Well, I agree. That's not an illogical interpretation, but I don't think it's mandated by the literal language used. But in any event, go on. I just wanted to pursue that briefly. Yes, thank you. On the exceptional circumstances, which I think is where you were going, one of the considerations, because it's an equitable doctrine, is how long you waited past the deadline. So if it was 31 days or 45 days or 60 days, that's one thing. But you've got five years or whatever, and that's kind of a different thing. So it seems to me that the exceptional circumstances you come up with have to be pretty compelling for equitable tolling to apply here. So my question is, what is your best argument that we should equitably toll here? Yes, thank you, Your Honor. That was where I was going next. The equitable tolling doctrine under Supreme Court law and Henderson v. Shinseki asks us to look at the particular circumstances as well as due diligence, of course. But due diligence is couched in reasonable diligence terms, not maximum feasible diligence. And when you're looking at diligence in this case, it's a case-by-case basis. Initially, you have to look at the steps that he took to apply for the relief. This is a person who is applying pro se. He's a farm worker, has no education. And he made this physical application to the Tampa office. He then went to the interview. He moved and he found an office where he went and got the interview notice. He went to the interview. At the interview, he was not told that anything else was needed. At that point, he had no reason to suspect that anything else was needed or it would not be approved. And we provided a manual to you in our reply at pages 7 and 8 of the appendix talking about how the legalization officer at the interview is supposed to tell the person if there's any missing documentation. No such information was passed on to the applicant here or the petitioner here. And so he left that office thinking that everything was fine and had no reason to think otherwise. He also was not notified that there could potentially be any deadlines in the future. So this is actually distinct from and sort of a more equitable circumstance from the ADEPA cases, the death penalty cases in Holland v. Florida, Henderson v. Shinseki, Auburn Regional Medical Center. When those people were actually aware of some potential deadline existing in the future, it was just a triggering event that they were not aware of. In this case, the respondent wasn't told we could send you something in the future asking for more evidence. Did they tell him when the appeal had to occur? No. So all you have is deny or, you know, there really wasn't any information given to him. Absolutely no information given to him. Was the HIV amendment to the process in place at the time of the interview? It was, Your Honor. It was in process as of, and that's in the request for information that also wasn't sent. That it started in July of 1987, I think, and this application was going forward in 1988, page 19 of the LEU record. So he was never informed that anything would be sent or that he would need to follow up with any sort of information. And then further, as the respondent concedes, we don't have any information or any proof that the denial was ever sent. So there was no triggering event that happened to notify him of a 30-day deadline, which was actually a really quick deadline compared to these other equitable tolling cases. In many cases where people have lost, it's been a 300-day deadline or a three-year deadline. And this is a 30-day deadline, and they never, we don't have proof that it was sent. The agency in this case points to it being sent by certified mail, but there's no proof of that in the file. They don't have any reason to say that. It's without any evidence. And when he did go to the service to actually check in on his appeal. Is there anything in the record about the record retention policy as to that? You're saying something's missing that should have been there 15 years ago. Well, we're saying it wasn't in there, that it never was in there. How do you know that? I mean, we presume, I mean, well, the government asks you to presume regularity, but that certified mail wasn't required. And I'm not saying certified mail was required. Well, I would also think if the government, I think the government is saying that you would expect a reasonable agency that always does it in a particular way, like sending a document like the I-694 form. Right. They don't have to put a blank form in every file, as long as their policy is. And, you know, they can produce witnesses who would confirm that. We don't put one in every file, but we do it every time. Understood, Your Honor. And, well, so 15 years later we have to find who the witness would have been if this had been timely pursued? That doesn't seem reasonable, does it? Well, the Eighth Circuit held in Goonam v. Ashcroft that the presumption of regularity when you're talking about regular mail, which is what we're talking about. I'm talking about proving the case. Forget the presumption. If there's no presumption, you still have to prove the case. Correct, Your Honor. And so what we would argue is that, or what we argue is that the appeal notice filed by the petitioner in 1995 does rebut any, it cures any problems that we might have with the file. Well, that was the only five-year delay. Then it was eight years more before the lawsuit. Correct. The adjudication was starting. Correct. Yes, that's absolutely true. Now all the witnesses are dead or gone. That's true.  So the notice of the appeal, though, is the petitioner saying that he never received the denial. I mean, it's clear from that notice of appeal and what he wrote in there, and that's at page 11, that I went to the office and I asked them what to do to be inferred, and they told me to file this appeal. So clearly prior to that moment, he had no idea that his case had been denied, and he had no motive to not respond to any sort of request for information or any sort of request or any sort of notification that he needed to appeal. These cases, there was no ability to put these people into proceedings if there was no suspicion of fraud. There was no risk associated with applying for these applications,  This is not a discretionary adjustment of status like we have in other types of situations. The attorney general shall adjust the status if the person qualifies. And the respondent has not questioned whether he qualifies or not. The evidence is in the file. Is there any evidence in the record as to what, in terms of, I mean, because you put a lot of weight on the fact, and I asked about this earlier, about what they didn't tell him. They didn't tell him you have this right. They didn't tell him you have this right. They didn't tell him really what was going on. Is there any evidence about what's usually required or what the government usually does in situations like this? Do they usually tell applicants, or do they usually not tell applicants? I mean, what does the record show to the extent we know? So what the record shows, I mean, we have the legalization manual in there talking about what they're supposed to do at that interview to tell them whether there's any missing documentation. And I think normally, I can only tell you anecdotally, frankly, because the record itself doesn't provide any sort of evidence, notes, or otherwise I told him I could send to him. I mean, we have the officer's notes in the record, page 20 in the LEU record, and there's no written note that she indicated that there would be any problem in the future, or any sort of notifications. The reason why I ask is because, I mean, the word exceptional means that it's a unique case. And if a lot of applicants are in the same place as your client, then presumably it's not exceptional, just by definition. And so I'm trying to figure out what makes this different from every other case. Certainly. So what makes this different? I mean, I don't think there are a lot of cases in this situation. I mean, this is the first case that this court has heard, frankly, and only the ninth and the fourth have published cases on this. So there just really aren't a lot of cases. And really, it's our point. I think possibly it did happen before, and then the appeals office agency actually used their equitable tolling principles and applied those to those cases. They did not in this case. That's why this case is unique, is because they did not take the time to actually consider equitable tolling. You have an SAW case for that? For what? That the agency acknowledged equitable tolling? Well, I did. When its regulations preclude a motion to reopen? I provided some AAO unpublished decisions, because most of the agency's decisions are unpublished. They're in the appendix to the supplemental. And they apply equitable tolling to an SAW? They discuss it, yes. They discuss equitable tolling in those cases. Well, discuss and apply are not the same. Sure, sure. So, I mean, I only have anecdotal. This is a 30-year-old case. I have anecdotal evidence from other attorneys who said, yes, they reopened cases. My other question is, do you have a federal appellate decision imposing equitable tolling on an immigration agency? Because it's not a favored doctrine. Certainly in the context, I would say in the context of ‑‑ I didn't anticipate that. Certainly in the context of notices to appear, we have the no-notice doctrine. Well, I mean, what prompted the question is, if the agency, not being arbitrary and capricious, precludes motions to reopen and reconsider these decisions, it's not surprising they don't apply equitable tolling. And if the regs precluding motions to reopen are consistent with the statute as the Second Circuit concluded, it's pretty heroic for this court to impose equitable tolling on that, on an agency that's refused to do it, isn't it? You know, if you've got ‑‑ tell me the Supreme Court case, immigration or not, that you would urge me to look at to counter that. Well, Supreme Court cases, we certainly have, with respect to equitable tolling. I mean, we have Henderson v. Shinseki. We have Auburn Regional Medical Center. But in the statutory context, where every clue in the statute and the regs is, delay is not only inappropriate, it's impermissible. Well, in Holland v. Florida, that was in a DEPA case. That was a statutory case. And they said that equitable tolling applied to that case. That would have been Holland v. Florida. And, oh, Sebelius v. Auburn Regional Medical Center had to do with the, I believe it's statutory, deadline. I think I'm out of time. Okay. Thank you, Your Honors. Thank you. Ms. Greer. Thank you, Your Honor. May it please the Court, I'm Christina Greer on behalf of the Attorney General. Your Honors, the issue here is whether the AAO's denial of Mr. Capiz's five years late appeal was an abuse of discretion or was directly contrary to clear and convincing facts contained in the record considered as a whole. It isn't. The regulations give a 30-day appeal period. Mr. Capiz didn't file his appeal until five years later. And his appeal was clearly untimely, as the AAO found. It didn't abuse its discretion by denying the appeal on that ground. Mr. Capiz argues that there were various issues with his case that warrant special consideration, but none of those arguments were presented to the agency in the first instance. And even apart from the applicability of issue exhaustion here, an agency's decision can't be an abuse of discretion on an issue when that issue was never presented to it. For example, the equitable tolling argument was never presented to the agency. So it never had the benefit of all of these arguments about whether equitable tolling should be applied. It didn't even know about Mr. Capiz's arguments about him not receiving notice or that he believed he was diligent in pursuing appeal once he found out. None of those were before the agency. In fact, in his original written letter that Petitioner's Counsel alluded to, it doesn't even say, I didn't know it was denied. He just says, I'm doing what I was told to do by the Detroit INS office. And then in his later letter from his attorney with the motion to accept the late filing in 2003, so 13 years after the denial, no, and this is an attorney-prepared motion, there's no, it just says, we know we're late. Please accept this. There's no indication that Mr. Capiz did not receive any notice. There's no indication that there would be an equitable tolling argument. One of the things that concerns me about this case is the history of the case where obviously things got lost on both sides, including on the government's part, and the administrative appeal apparently got lost in some sort of administrative snafu, and we didn't even get a decision until many years later. And so what effect does that have on the equitable tolling issue and on whether or not we should grant Mr. Capiz relief? I don't believe it has any bearing on it because that argument wasn't made. Mr. Capiz had counsel by 2003. None of these arguments were made. We don't, he didn't state why it was late in that letter when he had the opportunity to do so. And so the question when it comes to equitable tolling or, you know, this being a claims processing rule, so there being some flexibility, first the question is, can you get through the gate? Can you show this is why it was late? And he never gave any sort of indication why he was so late in filing the appeal. And so the agency can't have abused its discretion. It's not the agency's burden or requirement or duty to marshal arguments for the applicant. That's the applicant's duty, and particularly when the applicant is represented by counsel. And, Your Honor, this case comes back to the standard of review, which is abuse of discretion. The question is whether the AAO abused its discretion when it denied Mr. Capiz's appeal. And there's no, none of these arguments, again, were made to the agency. All the agency knew was this appealed to Mr. Capiz. And it did not abuse its discretion by denying the appeal for being five years late. Are you conceding, is the government conceding that equitable tolling applies to SAW denials? No, Your Honor. We also don't believe this is the correct vehicle for such a determination because none of these arguments were made before the agency, so it did not have the benefit of any of these arguments. This would be something that the agency would need to determine in the first instance. And particularly here, where, again, none of these arguments were before the agency, it didn't have the benefit of determining whether equitable tolling even applied. And it doesn't matter because all of the, because the agency did not abuse its discretion when it denied it based on untimeliness. I apologize for the long pauses. I want to make sure that if there are any questions, I'm not speaking over anyone. You have time left. I don't think we have any more questions, so when you're done with your presentation, we'll turn to the rebuttal. Wonderful. So then I just have a short conclusion that the AAO here did not abuse its discretion when it denied Mr. Capiz's untimely appeal, and thus the petition for review should be denied. And thank you, Your Honors. Thank you, and we appreciate your participating. It's not as good as environment as if you were here, but it worked. Thank you. Ms. McGowey for rebuttal. Two minutes. Okay, thank you, Your Honor. In response, we would say that Mr. Capiz did actually raise an equitable tolling argument. He raised it in his appeal notice when he said, I didn't receive it. The AAO didn't look at that, clearly, when they made their decision, but it was raised. It wasn't raised in the way a lawyer would raise it, but it was raised. And the letter from the attorney later on was just to provide the additional materials, but it wasn't making any additional argument. And the government's contention that he waived it, this court has discussed previously in Harwood v. Apfel that where there's a non-adversarial proceeding at the lower level, you have no notice that you're waiving any issues to be presented at a later proceeding that is adversarial. You can't have issue waiver. And so he did raise it, and it's allowed to be raised now and to be discussed. And the equitable tolling principles can be decided at this level. It doesn't have to be decided at the agency level. And the agency has used equitable tolling before based on those unpublished decisions that I provided to you. They just didn't in this case, and that was an abuse of discretion. But this would not be imposing any sort of law on the agency. It's a principle that has been around for a long time. Before this decision was made, equitable tolling existed in the Supreme Court law and in this court. It wouldn't be surprising. And again, to the question that you had earlier, Your Honor, you know, this was a deadline that's in a regulation. It's not in a statute. No, I understand. Okay. I checked Rahim on that. Okay. Thank you. The argument was made that they decided it wasn't arbitrary and capricious. They didn't say it was commanded by the statute. Sure. But it's notable that Congress made a point not to include a deadline for the appellate process in the statute itself at 1160, 8 BLC 1160. Thank you, Your Honors. Thank you, Counsel. The case has been well briefed and argued. It's complicated, and you've helped us sort it out, and we'll take it under advisement.